**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ECL GROUP, LLC AND IO** | § | |
| **PRACTICEWARE, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **CIVIL ACTION NO.** |
| | § | **3:17-CV-02399-D** |
| **TROY MASS,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR: (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT**

DMS 26488583v.2

## TABLE OF CONTENTS

Table of Contents .................................................................................................................ii

Table of Authorities .............................................................................................................iv

I.      Introduction ...........................................................................................................1

II.     Statement of Relevant Facts...................................................................................2

        A)  ECL Corporate Structure and National Operations ...............................2

        B)  ECL and ECL Affiliates'' Contacts with Texas .....................................3

        C)  ECL's Strategy Business Executives ......................................................4

        D)  ECL Hires Mass as a Strategic Business Executive ...............................5

        E)  Mass's Assigned Territories ...................................................................7

        F)  Mass's Work-Required Travel................................................................8

        G)  Mass's Partnerships with Other ECL Strategy Business Executives....................9

        H)  Mass Brags about Competing with ECL ...............................................10

III.    Argument and Authorities Regarding Choice of Law ......................................10

        A)  The Court Must First Determine Whether it has Jurisdiction..............................10

        B)  The Court Should Apply Texas Law .....................................................11

        C)  Mass Failed to Meet his Burden of Establishing an Exception Under

            §187 Applies ..........................................................................................12

            1)  The Exception Pursuant to §187(2)(a) Does Not Apply..........................12

                a.   Texas Has More Than "Some Relationship" with Plaintiffs,
                     Mass, and the Agreement...........................................................13

                b.   There is a Reasonable Basis for Choosing Texas Law ...............15

            2)  The Exception Pursuant to §187(2)(b) Does Not Apply ........................16

DMS 26488583v.2

a.  California Does Not Have the "Most Significant Relationship" with the Parties and Transaction ................................................. 16

    i.  Factor 1: The Parties Contracted between Ohio and California ....................................................................... 19

    ii.  Factor 2: There was no single place of negotiation ......... 20

    iii.  Factor 3: The Agreement was to be Performed in Multiple States ................................................................ 20

    iv.  Factor 4: The Subject Matter of the Contract was for Personal Services in Numerous States ........................... 22

    v.  Factor 5: Mass Resided in California and ECL is a North Carolina Company with a Texas Office and Texas Employees ...................................................................... 23

b.  California Does Not Have a Materially Greater Interest than Texas ......................................................................................... 24

c.  California's Fundamental Policy Regarding Non-Competition Agreements Does Not Negate the Texas Choice of Law ............ 27

    i.  Mass Did Not Void the Choice of Law Agreement ......... 28

    ii.  Section 925 Dose Not Apply to the Agreement .............. 29

IV.  The Temporary Restraining Order has Expired ................................................ 30

V.  Subject to Plaintiffs' Motion to Remand, Venue is Proper in the Northern District of Texas ................................................................................................................... 31

    A)  Venue is Proper in Texas State Court or the Northern District of Texas Pursuant to the Parties Forum Selection Clause ................................................. 31

    B)  Section 925 of the California Labor Code is Once Again, Inapposite ................. 32

    C)  Even Without a Forum Selection Clause, Venue Would be Proper in the State Court or the Northern District of Texas ............................................................ 33

VI.  Defendant is not Entitled to Attorney's Fees ................................................ 34

VII.  Conclusion ................................................................................................ 35

VIII.  Prayers for Relief ................................................................................... 35

DMS 26488583v.2

## TABLE OF AUTHORITIES

**Cases**

*Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298 (5th Cir. 1998) ................................................. 31

*Barrow v. Sutton*, 2014 U.S. Dist. LEXIS 191677 *7-8 (S.D.T.X. 2017) .................................... 33

*Cardoni v. Prosperity Bank*, 805 F.3d 573,  (5th Cir. 2015) ............................... 12,16,17,19,20,23

*Chase Manhattan Bank, N.A. v. Greenbriar North Section II*, 835 S.W.2d 720,  ....................... 18

*City of New Orleans v. Municipal Administrative Services, Inc.*,
376 F.3d 501 (5th Cir. 2004) ..................................................................................................... 32

*Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657 (Tex. 2004).............................................. 11

*Coutinho & Ferrostaal v. STX Pan Ocean Co.*,
2013 U.S. Dist. LEXIS 50100, 2013 AMC 2275, 2013 WL 1415107 (S.D.T.X. 2013) ............. 31

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990) ............................. 11,13,16,18,21,25

*Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527
(Tex. App.—Dallas 2014)............................................................................................. 16,18,22,23

*Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319 (Tex. 2014) ................. 11,12,13,16,17,21,25,28

*Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 663-64 (Tex. 2008) ........... 24

*Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 259 (Tex. App.—San Antonio 1999, pet. denied) . 11

G*inter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) ... 31

*Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227 (Tex. 1986) ....................................................... 30

*Haynsworth v. The Corp.*, 121 F.3d 956 (5th Cir. 1997)............................................................. 31

*Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202 (Tex. 2000) ............................................. 11

Interactive Music Technology, LLC v. Roland Corp. U.S., No. 6-07-CV-282,
2008 U.S. Dist. LEXIS 6266, 2008 WL 245142 at * 3 (E.D. Tex. Jan. 29, 2008)...................... 32

*Kossick v. United Fruit Co.*, 365 U.S. 731 (1961)....................................................................... 24

*Marsh United States, Inc. v. Cook*, 354 S.W.3d 764 (Tex. 2011) .......................................... 24,25

*Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, No. 2:16-cv-09152-ODW (SS),
2017 U.S. Dist. LEXIS 13357, at *1 (C.D. Cal. 2017).............................................................. 27

*Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33 (5th Cir. 1997)........................................... 31

*Patterson v. Crabb*, 51 S.W. 870, 871 (Tex. Civ. App. 1899, writ dism'd)................................. 25

*Pritchard v. Norton*, 106 U.S. 124 (1882) ................................................................................. 24

*Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004)............................................................ 24

*Scales v. Badger Daylighting Corp., No. 1:17-cv-00222-DAD-JLT,*
*2017 U.S. Dist. LEXIS 84401, at *16 (E.D. Cal. 2017)*.............................................................. 27

*Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228 (Tex. 2008)....... 11,18,25

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ....................................................... 10

*Teas v. Kimball*, 257 F.2d 817 (5th Cir. 1958) .......................................................................... 24

*Transperfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742 (S.D. Tex. 2009)....................... 18

DMS 26488583v.2

**Other Authorities**

28 U.S.C. § 1391(b)(2) ................................................................................................. 33

28 U.S.C. § 1406 .......................................................................................................... 31

Cal. Code Regs. tit. 8, § 11040 (F) ............................................................................. 28

Cal. Code Regs. tit. 8, § 11040 (H) ............................................................................. 28

Cal. Lab. Code § 925 ....................................................................................... 27, 28, 29

Federal Rule of Civil Procedure 12(b)(3) ................................................................... 31

Tex. Const. art. I, § 16 ................................................................................................. 24

COMES NOW Plaintiffs ECL GROUP, LLC ("ECL") AND IO PRACTICEWARE, INC.

("IO") (collectively, "Plaintiffs") and subject to their Motion to Remand, file this Response to

Defendant's Motion for: (1) an Opinion on Choice of Law; (2) Dismissal or Transfer; (3)

Dissolution of Injunctive Relief Improperly Obtained; and (4) Briefing Schedule on Attorney's

Fees and Other Relief and Brief in Support and would respectfully show the Court the following:

## I.

## <u>INTRODUCTION</u>

1.      Defendant Troy Mass ("Mass" or "Defendant") wants the Court to invalidate his

contractual non-compete and other restrictive covenants with Plaintiffs on the sole ground that he

is a California resident.  Defendant's Motion suggests a complex choice of law analysis in an

attempt to convince this Court that California law should apply and that as a result, the case should

either be dismissed or transferred to a California court pursuant to Rule 12b(3).  However,

Defendant's Motion is premature, because this Court has not yet ruled whether it has jurisdiction

over the case.  The Court cannot decide Defendant's Motion until it considers and rules on

Plaintiffs' Motion to Remand the case to the 193rd Judicial District, Dallas County, Texas ("State

Court") where is was originally filed.  Until the Court rules on the Motion to Remand, this entire

exercise of determining what state's law applies to the contract at issue is premature.

2.      Even if jurisdiction lies in this Court, which Plaintiffs dispute, Defendant's Motion

should be denied in full because Texas law, the law freely chosen by the parties, is the correct law

to apply in this case.  Specifically, Defendant cannot prove that he is entitled to an exception under

the Restatement (Second) of Conflict of Laws.  Therefore, the choice of law selected by the parties

must stand, and Defendant's Motion be denied.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 1**

DMS 26488583v.2

3.      Additionally, Defendant's request to dissolve the temporary restraining order is moot and further request regarding venue and for a briefing schedule on attorney's fees is inappropriate and premature and should be denied.

4.      Defendant improperly combines four (4) motions into this single Motion. However, Plaintiffs will respond to all four motions in a single response.

## II.

## STATEMENT OF RELEVANT FACTS

### A)  ECL Corporate Structure and National Operations

5.      ECL is an umbrella organization specializing in customized software that meets the unique and evolving needs of ophthalmology and optometry practices across the nation. There are eight entities under the ECL umbrella, including:   Integrity EMR, LLC ("Integrity EMR"); Medflow Holdings, LLC ("Medflow"); IO Practiceware, Inc. ("IO"); The Hoehne Group-Software Division, Inc. ("the Hoehne Group"); MD Office, LLC ("MDoffice"); Vision Care Alliance, LLC ("Vision Care"); Insight Software, LLC ("Insight Software"); and KeyMed, LLC ("KeyMed") (collectively, "ECL Affiliates"). The Affidavit of Suzanne Rupert is attached hereto and incorporated herein by reference as Exhibit 1.  *See,* Plaintiffs' Appendix ("Appx.") pg. 2-3.

6.      ECL strives to provide advanced, sophisticated software products to assist eye care medical practices with electronic health record storage and maintenance, as well as practice management solutions. *Id.,* Appx. pg. 2.  ECL Affiliates develop and sell the software, as well as provide customer support. *Id.*

7.      As a leader in the eye care software industry, ECL has developed relationships with doctors and their practices nationwide. The Affidavit of Dave Fotiadis is attached hereto and

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 2**

DMS 26488583v.2

incorporated herein by reference as Exhibit 2.  *See,* Appx. pg. 33.  Each practice presents unique needs based on the structure and role of the administrative staff as well as the type of clientele the practice serves. *Id.*  To meet those needs, ECL fosters relationships with its clients to customize the software to their changing needs. *Id.*

8.      ECL and the ECL Affiliates are headquartered in various states, but all operate nationally.  Exhibit 1, Rupert Affidavit, Appx. pg. 3.  For example, ECL, IO and Medflow are North Carolina entities with their principal places of business in North Carolina. *Id.*  All other ECL Affiliates have headquarters located around the country as follows: Texas (Integrity EMR); Utah (the Hoehne Group); New Jersey (MDoffice); Indiana (KeyMed); North Carolina (Vision Care Alliance); and Florida (Insight Software).  *Id.*

**B)  ECL and ECL Affiliates' Contacts with Texas**

9.      Texas is a part of ECL's coordinated national strategy and combined operations for the ECL Affiliates. *Id.*  In addition to conducting business in Texas and hiring employees in Texas, ECL and ECL Affiliates regularly conduct employee training in Texas. *Id.*  Defendant admits in his Motion and supporting affidavit that he attended a week-long training in Texas upon hire. Def. Mtn. for Opinion, Dkt. 8-3.

10.      Additionally, ECL maintains servers in Texas that house ECL's confidential information and trade secrets, as well as the confidential information and trade secrets of its Affiliates. Exhibit 1, Rupert Affidavit, Appx. pg. 3.

11.      ECL's outside general counsel is also located in Texas. *Id.,* Appx. 3-4. Counsel represents ECL, or oversees local counsel, on all litigation and employment matters nation-wide and further assists with the company's national legal strategies. *Id.*  In that vein, the vast majority of ECL employees, and employees of ECL Affiliates, have employment contracts with a Texas

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 3**

DMS 26488583v.2

choice of law clause. *Id.* Consistency in enforcing its employment contracts makes good business sense for ECL and ECL Affiliates because of their fluid national business model that requires employees to often work in multiple states and for one or more of the ECL Affiliates at any given time. *Id.*

### C) ECL's Strategy Business Executives

12.     Strategy Business Executives, like Mass, are high-level sales employees responsible for customer sales across multiple states. Exhibit 2, Fotiadis Affidavit, Appx. pg. 33. There are only between fourteen and eighteen Strategy Business Executives at ECL at any given time. *Id.* ECL's Strategy Business Executives are critical to ECL's success, as they are responsible not only for attracting new customers, but for winning additional business from existing customers. *Id.* Since January, 2017, Strategy Business Executives are responsible for selling product for all eight ECL Affiliates. *Id.*

13.     To empower its Strategy Business Executives to perform in the marketplace, ECL provides them confidential information and trade secrets regarding not just ECL, but all of the ECL Affiliates.  *Id.*

14.     ECL assigns Strategy Business Executives multistate territories on which they are expected to focus their sales efforts. *Id.* There is no requirement that a Strategy Business Executive live in any one state within their assigned territory. *Id.*, Appx. pg. 33-34. The only requirement is that the Strategy Business Executive is located somewhat near a major airport because travel is required approximately 50% of the time. *Id.* They can perform the remainder of their duties remotely. *Id.* The performance of their duties is fluid as their assigned territories are often changing. *Id.*

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 4**

DMS 26488583v.2

**D) ECL Hires Mass as a Strategic Business Executive.**

15.     In 2016, from Ohio, Suzanne Rupert, Director of Human Resources and Recruiting for ECL, posted an advertisement online seeking applicants for the position of Strategy Business Executive.  Exhibit 1, Rupert Affidavit, Appx. pg. 4.  The position was "based in the Western region of the USA based out of a home office close to a major airport." *Id., see also,* Exhibit 1-A, Appx. pg. 7-8.  Travel was estimated to account for 40-50% of the position. *Id.*

16.     In the early summer of 2016 Mass applied for this position via a website called www.postjobsforfree.com.   Exhibit 1, Rupert Affidavit, Appx. pg. 4.   Shortly after, Rupert interviewed Mass from Ohio by telephone for the position. *Id.*  Mass was near a major airport and did not have to relocate to be eligible for the position. *Id.*

17.     Subsequently, ECL invited Mass to interview for the position with David Fotiadis, Sales Team Senior Vice President for ECL. *Id.*   Mass traveled to North Carolina where the interview took place at ECL's Charlotte office. *Id., see also,* Exhibit 2, Fotiadis Affidavit, Appx. pg. 28

18.     On June 28, 2016, from Ohio, Rupert sent Mass an offer letter (the "Offer Letter") for the position of Strategic Business Executive. Exhibit 1, Rupert Affidavit, Appx. pg. 4; *see also,* Exhibit 1-B, Appx. pg. 10-11.  Mass's employment was "contingent upon execution of the Eye Care Leaders Group, LLC Employment, Confidentiality and Non-Solicitation and Non-Competition Agreement . . . ." *Id.*  Mass was also provided the Employment, Confidentiality, Non-Solicitation and Non-Competition Agreement (the "Agreement"), which Mass executed on June 28, 2016 and returned to Ms. Rupert in Ohio. Exhibit 1, Rupert Affidavit, Appx. pg. 4, *see also,* Exhibit 1-C, Appx. pg. 13-24.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 5**

DMS 26488583v.2

19.     The Agreement states, "Employee understands that job duties and location may change from time to time, without written notice." Exhibit 1-C, Appx. pg. 14.

20.     The Agreement also required Mass to use his "best efforts to promote the success" of ECL's business. *Id.*

21.     The Agreement further states, "This Agreement may not be altered or amended except in writing, signed by Employee and an authorized representative of Employer." *Id.,* Appx. pg. 22.

22.     Section 5.9 of the Agreement provides the following:

> Employee acknowledges that Confidential Information is kept in the State of Texas and such jurisdiction and venue is materially related to this Agreement. The parties hereto irrevocably and unconditionally submit to the exclusive jurisdiction of any State or Federal court sitting in Dallas, Texas, over any suit, action or proceeding arising out of or relating to this Agreement.

*Id.,* Appx. pg. 23.  ECL's confidential information and trade secrets are stored on servers located in Texas. Exhibit 1, Rupert Affidavit, Appx. pg. 3. The Agreement also contained a Texas choice of law provision.  Exhibit 1-C, Appx. pg. 23.  Mass freely agreed to all of these provisions. *Id.*

23.     The Offer Letter dictated the terms of acceptance by stating "[i]f not accepted within four days, this offer becomes null and void. Please send your acceptance of this offer via email as soon as possible to srupert@eliglobal.com." Exhibit 1-B, Appx. pg. 10-11.

24.     Mass returned his acceptance to Ohio within the allocated timeframe and his at-will employment with ECL commenced.  Exhibit 1, Rupert Affidavit, Appx. pg. 5.  Mass never questioned, or attempted to negotiate the choice of law, forum selection clause or any of the restrictive covenants. *Id.*

25.     Mass's compensation plan consisted of a base salary and eligibility for incentive pay. Exhibit 1-B, Appx. pg. 10-11.  In the spring of 2017, ECL routinely updated its incentive pay

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 6**

DMS 26488583v.2

structure.  Exhibit 1-D, Appx. pg. 25-30.  Mass's compensation plan continued to be a base salary and eligibility for incentive pay. *Id.*

### E)  Mass's Assigned Territories

26.     During Mass's employment, Strategy Business Executives were divided into two sales teams: the "Hunters" (who were to bring in new clients) and the "Farmers" (who were to cultivate existing client relationships). Exhibit 2, Fotiadis Affidavit, Appx. pg. 34.  Each state was assigned Hunters and Farmers. *Id.*

27.     Mass was assigned to the Farmers. *Id.*  His initial territory included Southern California, Nevada, and Arizona, and Hawaii. *Id., see also,* Exhibit 2-A-C, Appx. pg. 38-43. Strategy Business Executive Jeff Vittek (also a Farmer) was assigned Northern California.[1]  *Id.*, Appx. 34-35, *see also,* Exhibits 2-A-C, Appx. pg. 38-43.

28.     Between January 9, 2017 and March 6, 2017, Mass's territory consisted of Southern California, Arizona, and New Mexico. *Id.*  Vittek left the company in March, 2017, and Mass' territory was adjusted to include Nevada, Arizona, all of California, and Hawaii. *Id.*

29.     Because Mass was a Farmer, his entire job was to win additional business from existing customers. Exhibit 2, Fotiadis Affidavit, Appx. pg. 33.  In order to successfully do this, Mass needed, and ECL and the ECL Affiliates provided, confidential information and trade secrets pertaining to existing customers, including but not limited to customer contacts, customer buying history, customer pricing history, existing customer contracts, and information about each customer's medical practice and software needs.  *Id.*  Without this information, Mass would have been unable to perform the essential functions of his position.  *Id.*

---

[1] Vittek was also assigned to Nevada, Utah, and Hawaii. ECL hired Vittek and Mass around the same time.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 7**

DMS 26488583v.2

**F) Mass's Work-Required Travel**

30.    As part of the performance of his duties as Strategy Business Executive, Mass was required to travel for work.  Travel included, but was not limited to visiting out-of-state customers, attending quarterly sales meetings in North Carolina, and various training programs in Dallas, Texas.

31.    Specifically, Mass made the following business trips in his role as Strategy Business Executive:

- In July, 2016, Mass attended a week-long new employee training program in Dallas, Texas.

- In September, 2016, Mass traveled to Scottsdale and Tucson, Arizona, as well as to Carson City, Nevada.

- In October, 2016 Mass traveled to Las Vegas, Nevada and to Charlotte, North Carolina for ECL's National Sales Meeting for all ECL Affiliates.

- In November, 2016, Mass returned to Charlotte and also traveled to Phoenix, Arizona.

- In December, 2016, Mass again traveled to Las Vegas, Nevada.

- In January, 2017, Mass traveled to Dallas, Texas for ECL's mandatory training program strictly for Strategy Business Executives. He also traveled to Las Vegas, Nevada.

- In February, 2017 Mass traveled to Albuquerque and Las Cruces, New Mexico, as well as to Scottsdale and Phoenix, Arizona.

- In March, 2017, Mass returned to Las Vegas, Nevada, and Albuquerque, New Mexico.

- In July, 2017, Mass traveled to Charlotte, North Carolina for a quarterly National Sales Meeting.

Exhibit 2, Fotiadis Affidavit, Appx. pg. 36, *see also,* Exhibit 2-F, Appx. pg. 51-76.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 8**

**G) Mass's Partnerships with Other ECL Strategy Business Executives**

32.     Mass did not perform a single sale on his own during the entire time he worked for ECL. Exhibit 2, Fotiadis Affidavit, Appx. pg. 35.   All of his "sales" were to customer leads provided by Plaintiffs. *Id.*   Instead, he partnered and split commissions with Joshua Nail, Texas resident and Strategy Business Executive for Texas, New Mexico, and Louisiana.  *Id.*  Nail was also a Farmer. *Id.*

33.     As a team, Mass and Nail sold products from various ECL Affiliates, including Texas-based Integrity EMR. *Id., see also,* Exhibit 2, Fotiadis Affidavit, Appx. pg. 35, *see also,* Exhibit 2-D, Appx. 45-46.

34.     When Mass took vacation over the 2016 Christmas holiday, Nail oversaw all of Mass' deals in his absence. Exhibit 2, Fotiadis Affidavit, Appx. pg. 35, *see also,* Exhibit 2-E, Appx. 48-49.

35.     Mass also partnered and split commissions with Chad Camac (a Hunter), Strategy Business Executive for Colorado, Utah, Arizona, Nevada, and California.  Exhibit 2, Fotiadis Affidavit, Appx. pg. 35.   Mass and Camac also sold the Texas-based Integrity EMR product, among others. *Id., see also,* Exhibit 2-D, Appx., 45-46.

36.     In total, 42 sales transactions were attributed to Mass across five states. Twenty-seven of those transactions, however, were "add-ons;" sales made by customer support personnel to customers in Mass' territory and attributed to Mass by default. *Id.*   Add-on sales are not related to Mass's job performance. Exhibit 2, Fotiadis Affidavit, Appx. pg. 35

37.     Of the 15 remaining sales transactions attributed to Mass, seven were based in California and eight were based outside of California including:  three in Arizona; three in Nevada; one was in New Mexico; and one in Utah. *Id., see also,* Exhibit 2-D, Appx., 45-46.   Mass's

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 9**

DMS 26488583v.2

commission on all of the fifteen sales were split with Nail (seven deals) and Camac (eight deals). *Id.*

### H) Mass Brags about Competing with ECL.

38.     At ECL's quarterly National Sales Meeting in North Carolina, ECL discloses to its employees the company's most up-to-date confidential information and strategies for the upcoming year.  On July 18, 2017, Mass traveled to North Carolina for one of these meetings.  On July 19, 2017, Executive Assistant for ECL, Teresa Meer, was on the dance floor with Mass. He told her that he had accepted a job with Nextech Systems, LLC ("Nextech"), a direct competitor of ECL and the ECL Affiliates, and that he planned to start his new job at Nextech the following Monday, after ECL's sales conference.  The Affidavit of Teresa Meer is attached hereto and incorporated herein by reference as Exhibit 3.  *See,* Appx. pg. 78.

39.     Meer asked Mass if he was serious and he said yes.  *Id.*  Meer discontinued the conversation and immediately informed Brent Michael, Chief Commercial Officer for ECL. *Id.* Michael terminated Mass the next morning upon learning that Mass had accepted a position with Nextech.  Exhibit 2, Fotiadis Affidavit, Appx. pg. 37.

### III.

### ARGUMENT AND AUTHORITIES REGARDING CHOICE OF LAW

### A) The Court Must First Determine Whether it has Jurisdiction.

40.     The Court should not decide this Motion until it first establishes whether it has jurisdiction over the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 86 (1998) (rejecting doctrine of "hypothetical jurisdiction" that would allow a court to rule on issues of law before adjudicating jurisdiction). Plaintiffs maintain that federal question jurisdiction does not exist, and that Defendant has not met the amount-in-controversy requirement necessary to establish diversity

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 10**

DMS 26488583v.2

jurisdiction. Plaintiffs filed their Motion to Remand [Doc. 9] to the 193rd Judicial District Court, Dallas County, Texas on September 27, 2017 disputing Defendant's claims that this Court has either federal question or diversity jurisdiction.  Until remand is decided, the Court should not consider Defendant's Motion for Opinion on choice of law.

**B) The Court Should Apply Texas Law.**

41.    Even if this Court decides that it does have jurisdiction over this case (which Plaintiffs dispute), the Court should determine that the choice of law provision in the Agreement is enforceable and hold Defendant to his contractual obligation. Choice of law is a mixed question of law and fact requiring identification of relevant contacts. *See, Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 259 (Tex. App.—San Antonio 1999, pet. denied). Generally, the issue of which state's law applies is a question of law. *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004). The analysis of contacts, however, may raise questions of fact. *See, e.g. Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008); *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) (affirming court of appeals' reversal and remanding to trial court to determine which law applied).

42.    The Texas Supreme Court has expressly adopted the Restatement (Second) approach to contractual choice of law provisions. *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 57 Tex. Sup. J. 1346, 2014 Tex. LEXIS 760, *9-*10 (Tex. 2014); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–678 (Tex. 1990).  Texas will not override a choice of law agreement unless the party seeking to evade his contractual obligation can establish all requirements of an exception pursuant to the Restatement (Second) of Conflict of Laws § 187(2)(a) or (b). Moreover, Texas will not refrain from applying the chosen law merely because the result would differ under the law of the state the movant seeks to apply. *Drennen*, 452 S.W.3d at 331.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 11**

DMS 26488583v.2

43.     Mass attempts to impermissibly circumvent his agreement with ECL and his burden of establishing the (alleged) unenforceability of the choice of law provision pursuant to Section 187 of the Restatement. Mass summarily concludes that California is the "default law the Court should apply" and erroneously informs the Court that the "starting point is section 188 of the Restatement." Def. Mtn. for Opinion, Dkt. 8-1, p. 9.[2] This is not true. It is undisputed that Mass and Plaintiffs entered into a non-competition agreement with a Texas choice of law provision. Exhibit 1-C.  Accordingly, the Texas choice of law agreement is presumed enforceable and Mass bears the burden under Section 187 of establishing that an exception applies. Restat. 2d of Conflict of Laws, § 187; *see, Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015) (" To render a choice of law provision unenforceable, a party must satisfy the standards in Section 187(2) of the Restatement (Second) of Conflict of Laws…").

**C)  Mass Failed to Meet his Burden of Establishing an Exception Under §187 Applies.**

**1)   The Exception Pursuant to § 187(2)(a) Does Not Apply.**

44.     The first exception, provided in subsection (a) of Section 187(2), consists of two prongs:  (1) the movant must establish that "the chosen state has **no substantial relationship** to the parties or the transaction;" **and** (2) that there is "**no other reasonable basis**" for the chosen law.  Restat. 2d of Conflict of Laws, § 187(a) (emphasis added). Both must be met for the exception to apply. Neither the Restatement nor the Texas Supreme Court has defined "substantial relationship" *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 325 (Tex. 2014). The comments to the Restatement, however, indicate that parties will be held to their choice when "the state of the

---

[2] Mass then goes into an analysis of the "most significant relationship" test, which is one of three prongs Mass would need to establish under Section 187 of the Restatement, discussed in Section C(2)(a).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 12**

DMS 26488583v.2

chosen law [has] a sufficiently close relationship to the parties and the contract to make the parties' choice reasonable" *Id*. § 187 cmt. f.

45.     The choice of law provision may be enforceable even where there is no substantial relationship between the chosen law, the parties, and the transaction, provided there was a **reasonable basis** for the choice. *Id.* The Restatement and Texas law recognize that where a company has employees in numerous states, it may be reasonable to select a law to which the contract has no substantial relationships. Multistate entities, for example, "should be able to choose a law on the ground that they know it well and that it is sufficiently developed." Restat. 2d of Conflict of Laws, § 187 cmt. f. Maintaining uniformity in the treatment of its employees across states is an important objective for multistate corporations like ECL. *See, Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 329-30 (Tex. 2014); *DeSantis*, 793 S.W.2d at 680.

### a.  Texas Has More Than "Some Relationship" with Plaintiffs, Mass, and the Agreement.

46.     While only addressing the first prong of the Section 187(2)(a) exception, Mass incorrectly concludes that the exception applies, arguing that there is "no relationship between [the] parties and Texas, *much less a legally cognizable 'substantial' one."* Def. Mtn. Choice of Law, Dkt. 8-1 at p. 11 (emphasis added). However, the exception under Section 187(2)(a) requires a showing of "no substantial relationship" **and** "no other reasonable basis" for the chosen law. Mass fails to prove that the parties had "no other reasonable basis" for choosing Texas. Thus, even on the face of his argument, Mass is not entitled to the first exception because he fails to address the second prong.

47.     In addition to being legally unsound, Mass's blind assertion that Texas has "no relationship" with the parties and the Agreement is factually meritless.  In fact, the parties'

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 13**

DMS 26488583v.2

relationship with Texas is extensive.  With regard to ECL, Integrity EMR, one of the ECL Affiliates, is located in Texas.  Moreover, ECL has numerous employees in Texas, the vast majority of whom are subject to the same employment agreement as Mass. In addition, ECL stores its confidential information and trade secrets – the very information sought to be protected by the non-compete – on servers located in Texas.  ECL's outside general counsel is located in Dallas, Texas. *See*, *Drennen*, 452 S.W.3d 329-30 (acknowledging the location of outside counsel as a factor indicating "some relationship."). Also, ECL regularly hosts mandatory training sessions for Strategy Business Executives and other employees in Dallas, Texas.

48.     Texas also has a relationship with Mass that is intertwined with his employment with ECL. Mass partnered with Nail, an ECL employee and Texas resident to sell a Texas-based product. Mass split his commission fifty-fifty with Nail on seven of his fifteen deals. Exhibit 2, Fotiadis Affidavit, Appx. pg. 35.  As such, Mass's performance of his sales duties were dependent upon, in part, his partnership with a Texas resident selling a Texas-based product. Similarly, revenue received by that Texas resident was generated, in part, by Mass. Moreover, Mass attended the mandatory training program in Texas where he was given confidential information and trade secrets pertaining to all ECL Affiliate products, including Texas-based Integrity EMR and further developed his skills to aid in the performance of his duties in Texas.  Therefore, Texas has more than "some relationship" to the parties and transaction. *See* Restat. 2d of Conflict of Laws, § 187 cmt. f. (stating where "some relationship" exists, it will establish an "other reasonable basis" for the chosen law). Accordingly, Mass's conclusory statement that there is "no relationship" between Texas, the parties, and the transaction is meritless.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 14**

DMS 26488583v.2

### b.  There is a Reasonable Basis for Choosing Texas Law.

49.     Even if Mass addressed the second prong of the test, which he fails to do, Mass still could not take advantage of the Restatement 187(2)(a) exception.  The second prong cannot be met because there is a reasonable basis for choosing Texas law. Texas – home to some of the world's largest corporations - has well-developed law governing the relationship between employers and employees. *Drennen*, 452 S.W.3d at 329. ECL, as a multistate entity, has a vested interest in maintaining uniformity in its employment contracts across all employees, especially because those employees generally work in multiple states and their territories change frequently. *See*, *Id.* at 319, 329-30 (noting the public policy of Texas has shifted to value a company's ability to maintain uniformity in its employment contracts across all employees, regardless of the state in which they reside). ECL Affiliates are headquartered around the country, including Integrity EMR in Texas. ECL often trains employees in Dallas, Texas, and ECL's outside general counsel is located in Dallas, Texas.  As a multi-state company with close ties to Texas, it is entirely reasonable for ECL to select the well-developed law of Texas to govern its employment agreements. Uniformity is particularly important to the position of Strategy Business Executives, whose job duties and services span several states and are subject to frequent changes. Exhibit 2, Fotiadis Affidavit, Appx. pg. 33-34.  Therefore, even if Mass had addressed the second prong, his attempt to take advantage of the Section 187(2)(a) exception would still fail because there is a reasonable basis for choosing Texas law.

50.     Because Mass failed to satisfy his burden set forth in Section 187(2)(a), the Texas choice of law provision is enforceable.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 15**

DMS 26488583v.2

### 2) The Exception Pursuant to § 187(2)(b) Does Not Apply.

51.     Section 187(2)(b) of the Restatement provides the other exception under which a court may find a choice of law provision is unenforceable. Restat. 2d of Conflict of Laws, § 187(2)(b). This exception consists of three prongs, all of which must be proven by Mass for the exception to apply. The movant must establish that:  (1) application of the chosen law would be contrary to a fundamental policy of a state; (2) which has a materially greater interest than the chosen state in the determination of the particular issue; and (3) which, under the rule of Restatement § 188, would be the state of the applicable law in the absence of an effective choice of law of the parties. Restat. 2d of Conflict of Laws, § 187(2)(b).

52.     Texas analyzes the 187(2)(b) prongs in reverse order because the policy and interest of another state is moot unless the movant can establish the third prong of Section 187(2)(b). *See, e.g., Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 326 (Tex. 2014) (analyzing the Section 184(2)(b) factors in reverse order); *see, also, Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015) (analyzing the elements in reverse order and noting that, unless the third prong was met, there was "no reason" to consider the public policy of Oklahoma law where Texas was chosen law); *Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 535 (Tex. App.—Dallas 2014) (declining to "consider the other two elements of the section 187(2)(b)" where the "most significant relationship" was not met.).

### a.  California Does Not Have the "Most Significant Relationship" with the Parties and Transaction.

53.     The third prong of Section 187(2)(b) requires the Court to determine, under the factors set forth in Section 188, whether California law would apply in the absence of a choice of law provision. *See, Drennen*, 452 S.W.3d at 325 (quoting *DeSantis*, 793 S.W.2d at 678) ("The first

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 16**

DMS 26488583v.2

determination of Restatement section 187(2)(b) is whether there is a state the law of which would

apply under section 188 of the Restatement absent an effective choice of law by the parties.").

Section 188 presents five factors, all of which must be considered to ultimately determine whether

the state law the movant seeks to impose has a clearly more significant relationship with the parties

and their transaction than the chosen state. *See, Drennen*, 452 S.W.3d at 326 (discussing the Section

188 analysis in *Desantis* of whether the relationship of the transaction and parties to the non-chosen

state "was clearly more significant" than the relationship to the chosen state).

The five factors the Court must consider are:

1. the place of contracting;
2. the place of negotiation of the contract;
3. the place of performance;
4. the location of the subject matter of the contract; and
5. the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restat. 2d of Conflict of Laws, § 188 (2nd 1988); *see also, Cardoni*, 805 F.3d at 582.

54.     Not all Section 188 factors carry the same weight. For example, the place of

contracting, by itself, is "relatively insignificant" to determine whether a choice of law provision

should be overridden. Restat. 2d of Conflict of Laws, § 188 cmt. e. Similarly, the place of

negotiation is "of less importance when there is no one single place of negotiation and agreement,

as, for example, when the parties do not meet but rather conduct their negotiations from separate

states by mail or telephone. Restat. 2d of Conflict of Laws, § 188 cmt. e. Additionally, some factors

may be neutral and therefore do not assist the movant in establishing his burden.

55.     Where a contract contemplates performance in a single state, the place of

performance may be "conclusive in determining what state's law is to apply." *DeSantis*, 793

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 17**

DMS 26488583v.2

S.W.2d at 679 (citing Restat. 2d of Conflict of Laws, § 196). However, where a contract contemplates two or more states for the place of performance, this factor is no longer significant.

> The place of performance can **bear little weight** in the choice of the applicable law when (1) at the time of contracting it is either uncertain or unknown, or when (2) performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue.

Restat. 2d of Conflict of Laws, § 188 cmt. e (emphasis added); *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 234 (Tex. 2008) (noting the "paramount importance" attributed to the place of performance applies "only to service contracts involving a single state; it does not apply to contracts like this one contemplating services in many states.").

56.     Similarly, the location of the subject matter of an agreement bears little weight when the contract is for services not tied to any fixed location. *Ennis,* 427 S.W.3d at 535 (finding reversible error where trial judge overrode Texas choice of law and imposed California law, where place of performance, subject matter, and noncompetition agreement were not "tie[d] to a fixed location…or limited to any particular state or states.")  Rather, the location of the subject matter is significant when a contract involves "a specific physical thing, such as land or a chattel, or affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment." *See* Restat. 2d of Conflict of Laws, § 188 cmt. e.

57.     Most importantly, where the factors are divided, or it is unclear whether the movant's suggested state would apply in the absence of the choice of law agreement, the chosen law prevails. *See, e.g., Ennis,* 427 S.W.3d at 534-35; *see also*, *Chase Manhattan Bank, N.A. v. Greenbriar North Section II*, 835 S.W.2d 720, 726 (Tex. App.— Houston [1st Dist.] 1992, no writ) ("Considering these factors, we are unable to hold that Texas has a more significant relationship with the parties and the transaction than [the chosen state] New York."); *Transperfect*

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 18**

DMS 26488583v.2

*Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 750 (S.D. Tex. 2009) (enforcing choice of law provision where balance of most-significant-relationship factors did not indicate that another state (Georgia) had a more significant interest in the parties and transaction.)

### i.  Factor 1: The Parties Contracted between Ohio and California.

58.     The place of contracting is the "place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect." Restat. 2d of Conflict of Laws, § 188, cmt. e; *see also, Cardoni v. Prosperity Bank*, 805 F.3d 573, 577 (5th Cir. 2015) (noting the employees signed their agreements in Oklahoma but the final signatures were affixed in Texas, making Texas the place of contracting). The place of contracting in this matter is disputed, but relatively insignificant.  Rupert sent the Offer Letter and the Agreement from Ohio to Mass. Mass claims to have been in California when he signed both and returned them electronically to Rupert in Ohio. Def. Mtn. for Opinion, Dkt 8-1 at p. 12. On one hand, Mass emphasizes the fact that ECL did not affix a signature on the Agreement after he submitted it. Under Mass's view, the "last act necessary" to give binding effect to the contract, then, occurred in Ohio, not California. However, ECL was bound by the signed documents upon Mass's acceptance, which was effective upon dispatch (sending the returned documents to Suzanne Rupert). Indeed, the Offer Letter dictated the terms of acceptance by stating "[i]f not accepted within four days, this offer becomes null and void. Please send **your acceptance** of **this offer** via email as soon as possible to srupert@eliglobal.com." Exhibit 1-B. (emphasis added). Mass complied, returning the signed Offer Letter and the Agreement to Ohio within the designated timeframe to accept. As such, the place of contracting was Ohio.  Even if the Court were to conclude the parties contracted in California, this factor is relatively insignificant and, by itself,

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 19**

DMS 26488583v.2

does not satisfy the requirements of the exception. *See, e.g.*, *Cardoni v. Prosperity Bank*, 805 F.3d at 583.

### ii.      Factor 2: There was no single place of negotiation.

59.     Mass also claims that California was the place of negotiation. This is incorrect.  The evidence shows that there was no single place of negotiation as the parties negotiated by phone and email in at least two states.  After the interview process, Mass claims he negotiated a higher salary from California with "ECL personnel who were in North Carolina." ECL does not have any record of this, but even if it happened as Mass claims, it is not significant because the place of negotiation is "of less importance" when the parties "conduct their negotiations from separate states by mail or telephone." *See* Restat. 2d of Conflict of Laws, § 188 cmt. e. Such is the case here, where the communications leading up to the Agreement took place online and via telephone in Ohio, California, and North Carolina. If negotiations occurred, the negotiations occurred in various places. Thus, the second factor does not weigh in favor of California.

### iii.      Factor 3: The Agreement was to be Performed in Multiple States.

60.     Mass argues that the place of performance should be determinative.  Def. Mtn. for Opinion, Dkt. 8-1, p. 10 (emphasis in original). Once again, Mass's argument fails because the Agreement was to be performed in multiple states. Mass claims that he "rarely traveled to meet with clients in his other non-California territories" and "estimates that **well over 95%** of the time he spent working with ECL was spent in California" Def. Mtn. for Opinion, Dkt. 8-1, at pgs. 5; 7 (emphasis added). However, Mass was assigned, throughout the course of his employment, to six different states: Arizona, Nevada, New Mexico, Hawaii, Utah, and part of California.[3] Exhibit 2,

---

[3] Notably, California was the **only** state assigned to Mass that he split with another Strategy Business Executive.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 20**

Fotiadis Affidavit, Appx. pg. 34-35.  ECL expected Mass to perform his sales services in **all** of those states. *Id.* (emphasis added).  Indeed, Mass's job description states that travel accounts for 40% to 50% of the Strategy Business Executive role. Exhibit 1-A, Appx. pg. 7-8.  And, ECL has records of Mass' monthly and bi-monthly travel during to various states in his territory.  Exhibit 2-F, Appx. pg. 51-76.  Further, Mass traveled to Dallas for training on two occasions, and North Carolina for quarterly sales meetings on at least two occasions.  *Id.*  Therefore, Mass's estimation of the time he spent performing duties outside California is particularly dubious, self-serving, and contradicted by the evidence.

61.     Even if Mass' estimation that he spent 95% of his work-time in California is correct (it is not), it proves only that Mass neglected his duties under the Agreement, which required Mass to use his "best efforts to promote the success" of ECL's business. Exhibit 1-C, Appx. pg. 14. Mass's "best efforts" included the travel to multiple states that is clearly listed as an essential function of the Strategy Business Executive's job.  Exhibit 1-A, Appx. pg. 7-8.  Mass cannot rely on his failure to engage in required travel to the states in his territory in order to transform the place of performance to California.

62.     More importantly, the place of performance bears "little weight" because at the time of contracting, the place of performance was uncertain. *See*, *DeSantis v. Wackenhut Corp*., 793 S.W.2d 670, 679 (Tex. 1990) (citing Restat.. 2d of Conflict of Laws, § 196). The place of performance was loosely contemplated to be "based in the Western region of the United States" requiring "40 to 50% travel" and the "location may change from time to time without written notice." Exhibit 1-A, Appx. pg. 7-8.  Unlike the employee in *DeSantis,* whose residence in Texas was closely linked if not required to perform his duties as the Houston Area Manager, there was no requirement for Mass to reside in California to perform his remote sales services. Exhibit 2,

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 21**

DMS 26488583v.2

Fotiadis Affidavit, Appx. pgs. 33-34. Indeed, not all Strategy Business Executives live in their territories. *Id.* ECL expected Mass to perform his services in all states to which he was assigned: Arizona, New Mexico, and parts of California, and then later, Arizona, California, Nevada, and Hawaii. ECL never instructed Mass to focus exclusively on California. In fact, the majority of his sales were to customers outside of California.[4] *Id.,* Appx. pg. 35. Ultimately, the Section 188 place of performance factor, which "bears little weight" in a multi-state employment agreement, does not weigh in favor of California having the most significant relationship with the parties and transaction.

### iv.     Factor 4: The Subject Matter of the Contract was for Personal Services in Numerous States.

63.     Because Mass's services were to be performed in multiple states this fourth factor does not weigh in favor of California. It is undisputed that the subject matter of the agreement is the performance of sales services in multiple states. Def. Mtn. to Dismiss, Dkt. 8-1 at 12. The Agreement, including the noncompetition agreement, is not fixed to any one location or state and therefore does not weigh in favor of California. *See, e.g., Ennis*, 427 S.W.3d at 534-35 (finding reversible error where trial judge overrode Texas choice of law and applied California law to noncompetition dispute where employee lived in California, place of performance could have been various states and subject matter was therefore not tied to any fixed location, and noncompetition agreement was not tied to any particular state or states). The fact that Mass's home office happened to be in California does not conveniently transform the location of the subject matter of the Agreement to California. The location of his home office merely needed to be near a major airport. Exhibit 1-A, Appx. pg. 7-8. Indeed, there was no requirement for Mass to reside in one of the

---

[4] Mass's performance of sales services culminated in 15 sales: 8 of which were to customers outside of California. Exhibit 2, Fotiadis Affidavit, Appx. Pg. 35.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 22**

DMS 26488583v.2

states in his territory. Exhibit 2, Fotiadis Affidavit, Appx. pgs. 33-34.  Mass could have relocated

to another state and still performed his services under the Agreement. The Agreement expressly

recognizes: "Employee understands that job duties and *location may change from time to time*,

without written notice." Exhibit 1-C, Appx. pg. 14 (emphasis added). As such, this factor also does

not weigh in favor of California, and even if it did, it would have a minor effect.

> v.   **Factor 5: Mass Resided in California and ECL is a North Carolina Company with a Texas Office and Texas Employees.**

64.    The final Section 188 factor of domicile and place of business of the parties is

neutral, because the parties reside in different states and therefore does not weigh in favor of

California. *Cardoni*, 805 F.3d at 583 (finding employer's headquarters in one state and the

employee's residence in another state cancel each other out for a Section 188 analysis.).

Specifically, ECL is a North Carolina umbrella company that sells the products of other entities

based out of various states including Texas.[5] Mass is a California resident. Therefore, the location

of the parties cancel each other out, and the fifth Section 188 factor does not favor California.

65.    Of the Section 188 factors, none conclusively weigh in favor of California.  Thus,

the analysis stops there. Under Texas choice of law analysis, if the party seeking to apply a

different choice of law than the one agreed to by the parties to the contact cannot establish the third

factor of Section 187(2)(b), there is no need to consider the remaining prongs. *See Cardoni*, 805

F.3d at 582 (explaining Texas considers the prongs in the reverse order because "the first two

inquiries do not matter unless 'yes' is the answer to the last question posed."); *see also*, *Ennis,* 427

S.W.3d at 535 (declining to "consider the other two elements of the section 187(2)(b)" where the

"most significant relationship" was not met). Consequently, Mass is not entitled to the 187(2)(b)

---

[5] None of the ECL Affiliates are based out of California.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 23**

DMS 26488583v.2

exception and the Court should therefore deny Mass's request to override the Texas choice of law in favor of California law, and enforce the Texas choice of law provision.

### b. California Does Not Have a Materially Greater Interest than Texas.

66.     Even if Mass could get past the third prong of the 187(2)(b) test, he still cannot prove that California has a materially greater interest than Texas in the particular issue presented. While California does have a public policy against non-competition agreements (prong 1 of 187(2)(b)), it is not dispositive that California also has the materially greater interest. The freedom to contract is a core principal of Texas law, reflected in the Texas Constitution. *See* Tex. Const. art. I, § 16; *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 663-64 (Tex. 2008); *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 128-29 (Tex. 2004). This freedom includes entering into a non-competition agreement which is "a voluntary act for both parties." *Marsh United States, Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011). Closely linked to the freedom to contract is the strong interest Texas has in protecting the parties' justifiable expectations. *See Drennen*, 452 S.W.3d at 327.

> [The protection of the parties' justifiable expectations] is an **important value** in all fields of the law, including choice of law. Generally speaking, it would **be unfair and improper** to hold a person liable under the local law of one state when he had **justifiably molded his conduct to conform to the requirements of another state.**

Restat 2d of Conflict of Laws, § 6 cmt. g (emphasis added). Indeed, the importance of protecting justifiable expectations of the parties in contract choice of law cases has been noted frequently. *See, e. g., Kossick v. United Fruit Co.*, 365 U.S. 731, 741 (1961) ("we are dealing here with a contract, and therefore with obligations, by hypothesis, voluntarily undertaken. . . . This fact in itself creates some presumption in favor of applying the law tending toward the validation of the

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 24

DMS 26488583v.2

alleged contract."); *Pritchard v. Norton*, 106 U.S. 124 (1882); *Teas v. Kimball*, 257 F.2d 817 (5th Cir. 1958);

67.     Moreover, Texas law recognizes that covenants not to compete are an important tool to protect employers' investments in labor and to incentivize employers to train their employees. *See, Marsh United States, Inc. v. Cook*, 354 S.W.3d 764, 769 (Tex. 2011); *see also*, *Patterson v. Crabb*, 51 S.W. 870, 871 (Tex. Civ. App. 1899, writ dism'd) (recognizing the inequity of allowing a former employee to compete against an employer by using that employer's goodwill against him when the employee had agreed not to compete with the employer).

68.     Further, Texas values "the ability of a company to maintain uniformity in its employment contracts across all employees, whether the individual employees reside in Texas or [another state]." *Drennen*, 452 S.W.3d at 329-30 (noting that Texas hosts some of the world's largest corporations and Texas law has shifted to accordingly). Uniformity in contracts is paramount for multistate corporations like ECL, as it "prevents the disruption of orderly employer-employee relations within those multistate companies and avoids disruption to competition in the marketplace." *Id.* (quoting *DeSantis*, 793 S.W.2d at 680) (internal quotations omitted). Moreover, these objectives "may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby." *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 232 (Tex. 2008) (quoting the Restatement Second of Conflict of Laws § 187 cmt. e).

69.     ECL bargained for the non-competition agreement and choice of law clause. ECL specifically conditioned Mass's employment on his execution of the non-competition agreement. Exhibit 1-A, Appx. pg. 7-8.  By his own account, Mass is a skilled negotiator who (allegedly) negotiated a higher salary for himself. Def. Mtn. for Onion, Dkt. 8-1.  Mass had the opportunity

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 25**

DMS 26488583v.2

and competence to negotiate the non-competition agreement and/or the choice-of law agreement. Instead, however, he signed it without objection and readily accepted the benefits of the bargain. Under the justified expectation that it was protected by the Agreement, ECL employed Mass as a "Farmer" Strategy Business Executive and compensated him for developing relationships with existing clients. ECL provided Mass with the confidential information and trade secrets necessary to service and further develop those existing clients. Mass obtained critical knowledge of ECL and ECL Affiliates' software and customizations, as well as the current needs, expectations, and preferences of doctors and practices throughout the six states to which he was assigned.

70. Mass then used that confidential information to secure a job with ECL's direct competitor, Nextech. After accepting a position with Nextech, Mass continued to receive new confidential information and trade secrets from Plaintiffs and the ECL Affiliates through deceptive means. Mass attended Plaintiffs' national sales conference, where ECL's most up-to-date confidential information and trade secrets are relayed to sales employees, shortly after accepting the position with Nextech, but before giving notice to Plaintiffs. Exhibit 2, Fotiadis Affidavit, Appx. pg. 36-37. Mass has represented to this Court that he intends to continue to compete with ECL. ECL's contract with Mass (and all other employees) is designed to protect ECL and its affiliates from this precise situation. ECL's justified expectation throughout Mass's employment was that lawsuits arising from violation of the employment agreement, including non-competition agreements, would be subject to Texas law. The interest in protecting the party's justifiable expectations goes to the heart of Texas contract law. If the Court were to Rule California Law applies, companies like ECL will need to reevaluate whether to continue to employ California residents. Accordingly, California's interest in prohibiting non-competition agreements is not materially greater than the interest Texas has in the particular issues presented.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR: (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 26**

DMS 26488583v.2

**c. California's Fundamental Policy Regarding Non-Competition Agreements Does Not Negate the Texas Choice of Law.**

71.     Mass contends that application of Texas law would be contrary to the fundamental policy of California. To support this, Mass points to two California public policies. First, he discusses California's policy against non-competition agreements. Def. Mtn. for Opinion, Dkt. 8-1, at 14-15.  Mass next discusses a brand new California law, Section 925 of the California Labor Code, regarding the enforceability of choice of law agreements. Def. Mtn. for Opinion, Dkt. 8-1, at 15-17.  Section 925 states, in relevant part:

> (a) An employer shall not require an **employee** who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
> > (1) Require the employee to **adjudicate outside of California** a claim arising in California.
> > (2) Deprive the employee of the **substantive protection of California law** with respect to a controversy arising in California.
> (b) Any provision of a contract that is **voidable by the employee**, and if a provision is rendered void at the **request of the employee**, the matter shall be adjudicated in California and California law shall govern the dispute.
>
> (f) This section shall apply to a contract entered into, modified, or extended on or after January 1, 2017.

Cal. Lab. Code § 925 (emphasis added).[6] Mass argues "California's new public policy" sets "the exclusive forum for employment litigation in California…" Def. Mtn. for Opinion, Dkt. 8-1, at p. 16. Defendant's argument is simply not correct.

72.     Plaintiffs do not dispute that application of Texas law would likely contravene this California policy. Plaintiffs also do not dispute that Section 925 expresses a California policy

---

[6] Currently, there is a dearth of case law interpreting or applying Section 925. To Plaintiffs' knowledge, there are no Texas cases addressing Section 925 and only two (unreported) California cases, neither of which determined Section 925 applied. *See, Scales v. Badger Daylighting Corp.*, No. 1:17-cv-00222-DAD-JLT, 2017 U.S. Dist. LEXIS 84401, at *16 (E.D. Cal. 2017); *Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, No. 2:16-cv-09152-ODW (SS), 2017 U.S. Dist. LEXIS 13357, at *1 (C.D. Cal. 2017).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 27**

DMS 26488583v.2

disfavoring choice of law agreements for claims arising in California. Mass errs in his contention that these California policies unilaterally dictate the unenforceability of the Texas choice of law provision Mass agreed to in an effort to induce ECL to provide confidential information for claims arising outside California.  On the contrary, the contravention of California's fundamental policies does not, by itself, negate the Texas choice of law agreement. *See*, *Drennen*, 452 S.W.3d at 331 ("The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law.").  Mass's failure to establish the other two prongs wholly negates any claim he makes regarding an exception. Under the Restatement and Texas laws, the choice of law provisions is enforceable.

### i.        Mass Did Not Void the Choice of law Agreement.

73.     Mass argues that he effectively "voided" the Texas choice of law clause on August 30, 2017. Def. Mtn. for Opinion, Dkt. 8-1, at p. 16. Section 925 only invests the power to void a conflict of law agreement in the "employee." Cal. Lab. Code § 925(b). California defines "employee" as any person employed by any employer." Cal. Code Regs. tit. 8, § 11040 (F). California defines "employer" as "[a]ny person, association, organization, partnership, business trust, limited liability company, or corporation who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." Cal. Code Regs. tit. 8, § 11040 (H).

74.     By his own account, Mass (allegedly) voided the choice of law agreement about six weeks **after** ECL terminated him. Def. Mtn. for Opinion, Dkt. 8-1, p. 8. 11-12. This could not constitute a valid "void" because Mass was no longer an ECL "employee." The text of the statute on its face dictates that Mass no longer had the power to void the choice of law agreement. Indeed,

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 28**

DMS 26488583v.2

it would be inequitable for a California employee to acquire the benefit of a non-competition agreement (specialized training and confidential information), and retroactively void the bargained-for choice of law provision when an employer seeks to enforce its rights under the employment agreement. This would preclude the former employer from obtaining its benefit of the bargain (injunctive relief if the non-competition agreement is violated). Accordingly, even if Section 925 could apply in this situation, it was not triggered by Mass's untimely attempt to void the choice of law clause.

### ii.      Section 925 Does Not Apply to the Agreement.

75.      Even if Mass's untimely void were not fatal to the invocation of Section 925, Mass would still need to establish that the Agreement was modified after January 1, 2017 for it to apply. *See*, Cal. Lab. Code § 925(f). Mass claims that ECL's update to the incentive plan for all ECL sales employees "directly changed, modified and augmented the nature, extent, and terms of the purported Employment Agreement, and specifically, the incentive compensation Mass would earn, and ECL would owe, during Mass's Employment." Def. Mtn. for Opinion, Dkt. 8-1, at p. 15. This is simply not true. First, Mass's compensation plan, as set out in the Offer Letter, was base salary in addition to eligibility for Incentive Pay. Exhibit 1-B, Appx. pg. 10-11.  The 2017 incentive plan did not alter the terms of the Agreement. Indeed, Mass' compensation plan remained exactly as described in the Offer Letter: base salary in addition to the eligibility to earn incentive pay. Therefore, the Agreement was not needed.

76.      Moreover, the Agreement states that it "may not be altered or amended except in writing, signed by Employee and an authorized representative of Employer." Exhibit 1-C, Appx. pg. 22.  The 2017 incentive plan is not signed by an authorized representative of ECL, as required for a modification by the express terms of the Agreement.  Exhibit 1-D, Appx. pg. 26-30.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 29**

DMS 26488583v.2

77.     Additionally, whether a contract has been modified is a question of fact. *See,*

*Hathaway v. Gen. Mills, Inc.,* 711 S.W.2d 227, 228-229 (Tex. 1986).  In ascertaining which state's

law applies, factual issues may arise. Mass's contention that the incentive plan constituted a

modification opens factual inquiries that may require discovery. At a minimum, his conclusory

statement that the contract was modified in 2017 cannot be taken at face value to trigger Section

925. Indeed, Mass cites to no authority for his claim that the updated incentive plan modified the

"nature, extent, and terms" of the Agreement. Yet again, Mass's attempt to impose Section 925 on

the Court's analysis of the choice of law issue fails.

78.     Mass's argument that Section 925 applies and lends credence to his argument for

California choice of law fails.  It does not apply to this case, and even if it did, its application is

moot because it would merely support the first prong of the Section 187(2)(b) analysis outlined

above; that application of Texas law would contravene a fundamental policy of California law.

However, Mass's failure to establish the other two prongs of Section 187(b)(2) is already fatal to

his claim that the Texas choice of law provision is unenforceable. Accordingly, the Court should

not consider Section 925 of the California Labor Code at all.

## IV.

## <u>THE TEMPORARY RESTRAINING ORDER HAS EXPIRED</u>

79.     Mass's argument that the temporary restraining order ("TRO") should be dissolved

is moot because it expired on September 28, 2017 per the State Court Order. *See* Dkt. 10-1, Order

Extending Temporary Restraining Order.  Likewise, Mass's argument that no further injunctions

should issue is premature as this Court has requested briefing on Plaintiffs' Motion for Preliminary

Injunction as set out in their Petition and Application for Injunctive Relief filed in the State Court

(Doc. 1).  Plaintiffs' have filed an Expedited Motion for Expedited Discovery (Doc. 20), served

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 30**

DMS 26488583v.2

written discovery requests, and requested dates for Mass's deposition all in an effort to obtain the evidence necessary to further brief the Motion for Preliminary Injunction.

**V.**

**SUBJECT TO PLAINTIFFS' MOTION TO REMAND, VENUE IS PROPER IN THE NORTHERN DISTRICT OF TEXAS**

   A) **Venue is Proper in Texas State Court or the Northern District of Texas Pursuant to the Parties' Forum Selection Clause**

     80.    There are no grounds to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3), or transfer this case pursuant to 28 U.S.C. § 1406 because the forum selection clause is valid, mandatory, and should be enforced.

     81.    When the parties to a contract agree to a forum selection clause, venue is presumed proper in that jurisdiction. *Coutinho & Ferrostaal v. STX Pan Ocean Co*., 2013 U.S. Dist. LEXIS 50100, 2013 AMC 2275, 2013 WL 1415107 (S.D.T.X. 2013). "Federal rather than state law determines the enforceability of a forum-selection clause" *Id., citing,* G*inter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008). "Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'" *Ginter,* 536 F.3d at 441, (*citing Haynsworth v. The Corp*., 121 F.3d 956, 963 (5th Cir. 1997)); *see also Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998); *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997).

the Agreement states in relevant part:

> Employee acknowledges that Confidential Information is kept in the State of Texas and such jurisdiction and venue is materially related to this Agreement. The parties hereto irrevocably and unconditionally submit to the exclusive jurisdiction of any State or Federal court sitting in Dallas, Texas, over any suit, action or proceeding arising out of or relating to this Agreement. . . The parties hereto irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 31**

DMS 26488583v.2

or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum…

Exhibit 1-C, Appx. pg. 23.

82.     Further, it is a mandatory forum selection clause prohibiting venue in any other location except state or federal courts sitting in Dallas, Texas.  "[W]here venue is specified in a forum selection clause *with mandatory or obligatory language*, the clause will be enforced. . ."  *Interactive Music Technology, LLC v. Roland Corp. U.S*., No. 6-07-CV-282, 2008 U.S. Dist. LEXIS 6266, 2008 WL 245142 at * 3 (E.D. Tex. Jan. 29, 2008) (emphasis added).  The mandatory forum selection clause does more than establish that one forum will have jurisdiction and venue. *See, e.g. City of New Orleans v. Municipal Administrative Services, Inc.,* 376 F.3d 501, 504 (5th Cir. 2004), cert. denied, 543 U.S. 1187, 125 S. Ct. 1396, 161 L. Ed. 2d 189 (2005).  The forum selection clause in Mass's Agreement goes so far as to exclusively grant jurisdiction and venue to state and federal courts sitting in Dallas, Texas and the parties expressly waived any objection to venue.  *See,* Exhibit 1-C, Appx. pg. 23.

83.     There is no dispute that Mass agreed to the mandatory forum selection clause and that Plaintiffs filed suit in the State Court in accordance with that mandatory forum selection clause. (Doc. 1).  Therefore, venue is proper in this Court, subject only to Plaintiffs' Motion to Remand.

**B) Section 925 of the California Labor Code is Once Again, Inapposite.**

84.     Defendant once again inappropriately relies on Section 925 of the California Labor Code to substantiate his argument that the forum selection clause is not enforceable.  Specifically, he claims that he "voided" the forum selection clause on August 30, 2017 pursuant to Section 925.  However, as outlined at length above in the section discussing choice of law, Section 925 does not

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 32**

DMS 26488583v.2

apply to this case.  Therefore, Defendant has not met his "heavy burden" to show that the forum selection clause is not enforceable.  The forum selection clause should be enforced, and proper venue lies in this Court.

### C)  Even Without a Forum Selection Clause, Venue Would be Proper in the State Court or the Northern District of Texas.

85.     Even without a forum selection clause, venue is still proper in the State Court where Plaintiffs originally filed, and subject to Plaintiffs' Motion to Remand, is also proper in this Court because pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of the property that is the subject of the action is located in Dallas, Texas.

Section 1391(b)(2) states in relevant part:

(b) Venue in General.—A civil action may be brought in—


(2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, **or a substantial part of property that is the subject of the action is situated**; or

28 U.S.C. § 1391(b)(2) (emphasis added).

86.     Section 1391(b)(2) clearly applies because Plaintiffs' confidential information and trade secrets are stored on servers located in Dallas, Texas.  *See,* Exhibit 1, Rupert Affidavit, Appx. pg. 3.  Personal property that is specifically identifiable, tangible, and which is the subject of the agreements and business dealings between the parties is "property" covered by Section 1391(b)(2).  *See, e.g. Barrow v. Sutton*, 2014 U.S. Dist. LEXIS 191677 *7-8 (S.D.T.X. 2017).  Plaintiffs' confidential information amounts to tangible personal property belonging to Plaintiffs which is the subject of agreements and business dealings between the parties.  In fact, the entire purpose of the restrictive covenants included in Mass's Agreement, including the noncompetition clause, are to protect Plaintiffs' confidential information and trade secrets.  The Agreement states:

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 33**

DMS 26488583v.2

Employer and the Employee hereby mutually agree that the Employer's business was built and is based on the Employer's goodwill, public perception, and customer relations. Employer's Confidential Information provides a material competitive advantage to Employer in a highly competitive industry. In consideration for protection of Employer's goodwill, customer relations, reputation, training provided by Employer to Employee, Employer's method of doing business and the grant by Employer of Confidential Information to Employee, which would be inevitably disclosed or used by Employee in a subsequent competitive job, the Employee grants the non-compete and non-solicitation restrictions contained in this Article 4.

Exhibit 1-C, Appx. pg. 19.

87.     Because Plaintiffs' confidential information is stored in Texas and Defendant was trained in Texas, where he received confidential information, venue is proper in the State Court or in this Court.  Therefore, the case should neither be dismissed, nor transferred.

## VI.

## <u>DEFENDANT IS NOT ENTITLED TO ATTORNEY'S FEES</u>

88.     Defendant further requests that this Court order briefing on Defendant's claims for attorney's fees.  Defendant's arguments once again rely on Section 925 of the California Labor Code.  As discussed at length in this brief, Section 925 is inapplicable.  Defendant entered into the Agreement with Plaintiffs before Section 925 went into effect and the parties did not modify the Agreement in 2017.  Also, Defendant was no longer an employee of Plaintiffs when he attempted to "void" the choice of law and forum selection clauses in the Agreement.  Moreover, the ability of an ex-employee to void choice of law and forum selection *after* having received the benefit of the employer's confidential information and trade secrets disregards fundamental fairness and deprives the employer of the benefit of their bargain – restrictive covenants in exchange for access to confidential information in trade secrets.  Therefore, Defendant is not entitled to attorney's fees, and the Court should deny Defendant's request for briefing on this issue.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 34**

DMS 26488583v.2

## VII.

## <u>CONCLUSION</u>

89.    Texas law applies and venue is proper in this Court subject to Plaintiffs' Motion to Remand.  The choice of law provision and forum selection clause in the Agreement are fully enforceable.  Mass cannot meet his burden to show establish any of the exceptions set forth in Section 187(2) of the Restatement of Conflict of Laws. California does not have the "most significant relationship" to the parties or to the transaction due to Plaintiffs' multi-state presence and Mass's multi-state employment.  Likewise, Texas has significant contacts with both Plaintiffs and Mass.

90.    Further, venue is proper in this Court and the matter should not be dismissed or transferred because the parties agreed to a mandatory forum selection clause that makes venue obligatory in the state and federal courts sitting in Dallas, Texas.  Plaintiffs abided by that clause when they filed this action in the State Court.  Further, the property at issue in this case, Plaintiffs' confidential information and trade secrets, is located in Dallas, Texas.  Defendant has not met his "heavy burden" to establish that venue should lie elsewhere.

## VIII.

## <u>PRAYER FOR RELIEF</u>

91.    For the reasons discussed above, Plaintiffs request the Court deny the relief sought by Defendant. Plaintiffs respectfully request the Court find that Mass failed to meet his burden of establishing the Texas choice of law agreement is unenforceable, deny Defendant's request to apply California law, and further deny Defendant's request to dismiss the case or transfer the venue to the Central District of California.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 35**

DMS 26488583v.2

DATED: October 24, 2017

Respectfully submitted,

**CONDON   TOBIN   SLADEK   THORNTON
PLLC**

*/s/ Aaron Z. Tobin*

Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
E. Ashley Sims
Texas Bar No. 24051776
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: 214-265-3800
Facsimile: 214-691-6311
Email: atobin@ctstlaw.com
        kreed@ctstlaw.com
        asims@ctstlaw.com

**ATTORNEYS FOR PLAINTIFFS**

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:   (1) AN OPINION ON CHOICE OF LAW; (2)
DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4)
BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 36**

DMS 26488583v.2

## <u>CERTIFICATE OF SERVICE</u>

On October 24, 2017, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Jamie Jean McKey
Joe Kendall
Kendall Law Group LLP
3232 McKinney Avenue, Suite 700
Dallas, TX 75204


Felipe J Arroyo
Robbins Arroyo LLP
600 B Street
Suite 1900
San Diego, CA 92101

<u>/s/ E. Ashley Sims</u>
E. Ashley Sims

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR:  (1) AN OPINION ON CHOICE OF LAW; (2) DISMISSAL OR TRANSFER; (3) DISSOLUTION OF INJUNCTIVE RELIEF IMPROPERLY OBTAINED; AND (4) BRIEFING SCHEDULE ON ATTORNEY'S FEES AND OTHER RELIEF AND BRIEF IN SUPPORT – Page 37**

DMS 26488583v.2