IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ECL GROUP, LLC and IO            §
PRACTICEWARE, INC.,              §
                                 §
                Plaintiffs,      §
                                 §
VS.                              §        Civil Action No. 3:17-CV-2399-D
                                 §
TROY MASS,                       §
                                 §
                Defendant.       §

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiffs ECL Group ("ECL") and IO Practiceware, Inc.

("IOPW") move to remand, and defendant Troy Mass ("Mass") moves for an opinion on

choice of law, dismissal or transfer, dissolution of a state court temporary restraining order

("TRO"), and a briefing schedule on attorney's fees and other relief. For the reasons that

follow, the court denies the motion to remand; grants Mass's motion for an opinion on choice

of law to the extent of holding that California law applies; denies Mass's motion for

dismissal or transfer; denies as moot Mass's motion for dissolution of the state court TRO

(which has already expired); and denies without prejudice Mass's motion for a briefing

schedule on attorney's fees and other relief.

I

Mass is a former top sales representative for ECL and IOPW, affiliated entities that

offer software, practice management systems, and other services to ophthalmology and

optometry offices. In June 2016 Mass signed an Employment, Confidentiality, Non-

Solicitation and Non-Competition Agreement ("Employment Agreement") with ECL.[1]  The

Employment Agreement contains a Texas choice-of-law provision[2] and a Texas forum

selection clause.[3]  It also includes a noncompetition provision that states, in pertinent part:

> (a) *Noncompetition*. For the duration of the Term of Employment and for two years thereafter ("*Restricted Period*"), Employee will not, directly or indirectly, in any capacity whatsoever, individually or on behalf of any other person or entity, engage in, own, manage, operate, finance, control, or participate in the ownership, management operation, financing or control of, be employed by, associated with, or in any manner connected with, lend the Employee's name or any similar name to, lend the Employee's credit to or render services or advice to, any business engaged or about to become engaged in the Business of the Employer, or any of its Affiliates in the Market Area.

Emp. Agmt. ¶ 4.2(a) (first italics in original; second italics underlined in original).  And it

contains a confidentiality provision:

> Employee will hold in strictest confidence the Confidential Information and will not disclose it to any Person, except with the specific prior written consent of the Employer or as may be required by court order, law, government agencies or parties with which the Employer deals in the ordinary course of its business, or except as otherwise expressly permitted by the terms of this Agreement.  The Employee will hold the Confidential Information in strictest confidence permanently

---

[1]ECL is identified in the Employment Agreement as "Eye Care Leaders Group, LLC."

[2]The Employment Agreement states: "This Agreement shall be construed in accordance with, and governed by, the laws of the State of Texas."  Emp. Agmt. ¶ 5.10.

[3]The Employment Agreement provides: "The parties hereto irrevocably and unconditionally submit to the exclusive jurisdiction of any State or Federal court sitting in Dallas, Texas, over any suit, action or proceeding arising out of or relating to this Agreement.  Emp. Agmt. ¶ 5.9.

and without any time limitation.

Emp. Agmt. ¶ 3.3(a).

This lawsuit arises from Mass's decision to leave his position with ECL and IOPW and join a direct competitor, Nextech Systems, LLC ("Nextech"). Before departing ECL and IOPW, Mass attended ECL and IOPW's national sales conference, an annual event where sales representatives learn about the companies' most recent confidential information and trade secrets. At the time the conference was held, Mass knew that he would begin work at Nextech the following week. After hearing rumors that Mass intended to gather confidential information from the conference for the benefit of Nextech, ECL and IOPW terminated Mass's employment. Mass began working for Nextech in August 2017, but he maintains that he is currently unemployed.

Shortly after Mass started working for Nextech, ECL and IOPW brought this lawsuit in Texas state court, alleging causes of action for common law breach of contract, breach of fiduciary duty, defamation, and misappropriation of trade secrets. They based their claims on Mass's access to confidential information and trade secrets through his Sales Representative position.[4] The state court petition did not specify the amount of monetary

[4]The original petition alleges:

> Mass' position as a Sales Representative with Plaintiffs accorded him access to confidential information and trade secrets belonging to Plaintiffs, including but not limited to specially-developed business plans and processes, pricing data, database, sales reports, employee files and contracts, employee lists, training materials, internal processes, customer contracts,

damages that ECL and IOPW sought, aside from this allegation: "[p]ursuant to Tex. R. Civ. P. 47(c)(2) Plaintiffs seek monetary relief of $100,000 or less and non-monetary relief." Pet. ¶ 2.

Mass timely removed the case to this court based on federal question jurisdiction, under 28 U.S.C. § 1331, and based on diversity jurisdiction, under 28 U.S.C. § 1332. Section 1332(a)(1) provides that the district court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"

Before the case was removed, ECL and IOPW obtained a TRO against Mass from the Texas state court on August 31, 2017, which the court later extended through September 28, 2017. ECL and IOPW also applied to the state court for a temporary injunction ("preliminary injunction"). After the case was removed, this court entered a preliminary injunction application scheduling order and an order allowing expedited discovery. The parties are currently conducting discovery related to the preliminary injunction application. The state court TRO has expired under its own terms.

ECL and IOPW move to remand the case to state court. Mass opposes the motion and moves for an opinion on choice of law; dismissal or transfer of the case; dissolution of the

---

renewal dates, marketing materials, financial information and data and customer lists, and other highly confidential and proprietary information and trade secrets.

Pet. ¶ 17.

state court TRO; and a briefing schedule on attorney's fees and other relief and brief in support.

## II

The court first addresses ECL and IOPW's motion to remand. It need only decide whether it can exercise diversity jurisdiction.[5]

## A

As the removing party, Mass "has the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper." *Carnes v. Data Return, L.L.C.*, 2005 WL 265167, at *1 (N.D. Tex. Feb.1, 2005) (Fitzwater, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). "In general, defendants may remove a civil action if a federal court would have had original jurisdiction." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing 28 U.S.C. § 1441(a)). "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). "The federal removal statute, 28 U.S.C. § 1441, is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997) (citing *Carpenter v. Wichita Falls Indep.*

---

[5]Because the court holds that it can exercise diversity jurisdiction, it need not address whether it can exercise federal question jurisdiction.

*Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)).  "[D]oubts regarding whether removal

jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown &*

*Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

B

Both sides agree that the parties are diverse citizens.  Plaintiffs move to remand on the

ground that Mass has neither asserted nor established that the amount in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs.

If the plaintiffs' state court petition demands monetary relief of a stated sum, that sum,

if asserted in good faith, is deemed to be the amount in controversy.  *Dart Cherokee Basin*

*Operating Co. v. Owens*, ___U.S.___, 135 S.Ct. 547, 551 (2014).  But when, as here, the

plaintiffs' state court petition does not demand relief of a stated sum, the defendants' notice

of removal must make "a plausible allegation that the amount in controversy exceeds the

jurisdictional threshold." *Id*. at 554.  No evidence is required unless and until the plaintiff

contests, or the court questions, the allegation.  *See id*. at 551, 554.

If the plaintiffs contest the allegation, then the defendant must prove by a

preponderance of the evidence that the amount in controversy requirement has been satisfied.

*Id*. at 554 (explaining that, if plaintiff contests defendant's allegation, then "both sides submit

proof and the court decides, by a preponderance of the evidence, whether the

amount-in-controversy requirement has been satisfied"); *see also Allee Corp. v. Reynolds &*

*Reynolds Co.*, 2015 WL 1914663, at *3 (N.D. Tex. Apr. 28, 2015) (Fitzwater, J.).  The

defendant's burden "is met if (1) it is apparent from the face of the petition that the claims

are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth summary judgment type evidence of facts in controversy that support a finding of the requisite amount." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (internal quotation marks omitted). If the defendant can produce evidence sufficient to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, the plaintiffs can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed the sum or value of $75,000, exclusive of interest and costs. *See De Aguilar*, 47 F.3d at 1412.

### C

In the present case, it is not apparent from the face of the petition that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The court must therefore decide whether Mass has demonstrated by a preponderance of evidence that the amount in controversy requirement is met. Plaintiffs maintain that Mass has not established an amount in controversy in excess of the threshold amount of $75,000. They maintain that Mass cannot include the value of trade secrets or his salary when calculating the amount in controversy. They also contend that Mass has not shown that the amount in controversy, when including attorney's fees, exceeds the $75,000 threshold.

The court will assume *arguendo* that the value of ECL and IOPW's confidential information and trade secrets, breach of contract damages, attorney's fees, and defamation damages are not to be factored into the determination of the amount in controversy. Even so, Mass has shown by a preponderance of evidence that the value alone of enjoining his

competitive activity exceeds the jurisdictional threshold.

Plaintiffs' state court petition seeks injunctive relief based on claims for breach of contract, misappropriation, and breach of fiduciary duty.[6] "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *see also Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (per curiam); *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 640 (5th Cir. 2003). When determining whether to confer federal jurisdiction, the court considers "the value of the plaintiff's right sought to be enforced." *Garcia*, 351 F.3d at 639 (citing *Alfonso v.*

---

[6]In their petition, ECL and IOPW seek a temporary restraining order, temporary injunction, and permanent injunction, ordering Mass to:

> a. Cease, desist and refrain from directly or indirectly competing with Plaintiff or any of their affiliates including, but not limited to, ECL Group, LLC and/or IO Practiceware, Inc., in accordance with the terms of the Mass Employment Agreement;
>
> b. Cease, desist and refrain from directly or indirectly accessing, using or disclosing any of Plaintiffs' confidential and proprietary information and trade secrets including but not limited to Plaintiffs' financial information, sales data, sales reports, accounts receivable reports, sales leads, customer lists, strategic plans, customer information and contacts, employment packets, employee information and files, pricing policies and strategies; and
>
> c. Cease desist and refrain from defaming and disparaging Plaintiffs and/or any of their affiliates and agents.

Pet. ¶ 62.

*Hillsborough Cnty. Aviation Auth.*, 308 F.2d 724, 727 (5th Cir. 1962) (declining to assess

defendants' loss because "[t]he value to the plaintiff of the right to be enforced or protected

determines the amount in controversy")).

> When a business is threatened . . . by breach of a covenant not
> to compete—the stated rule is that the amount in controversy in
> an action for injunctive or declaratory relief is the difference
> between the value of the business . . . with the covenant, and its
> value . . . subject to the breach of the covenant.

*Brand Energy Sols., LLC v. Rakocy*, 2016 WL 7476221, at *3 (E.D. La. Dec. 29, 2016)

(citing 14AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §

3708 (4th ed. 2016)).  In the case of injunction against uncertain sales activity, courts

typically look to "the profits earned by the employer on business generated by the employee

during the period immediately preceding his termination."  14AA Wright & Miller, *supra*,

§ 3708 (citing *Zep Mfg. Corp. v. Haber*, 202 F. Supp. 847 (S.D. Tex. 1962)).[7]

Here, plaintiffs do not contest Mass's assertion that he generated around $1 million

in sales for ECL during his year at the company.[8]  Assuming the same rate of sales, and based

on the two-year duration of the noncompete clause, ECL and IOPW will lose about $2

---

[7]Courts do recognize, however, that this method is merely an "analogous basis" for
determining the value to the former employer of the injunction.  *Zep Mfg. Corp.*, 202 F.
Supp. at 848.  It is imprecise because it relies on the assumption that the former employer
will lose all of the business generated by the employee when the employee joins the
competitor.  *Id.*

[8]Mass avers: "I estimate that, in the time I sold services and products for ECL under
its employ [from July 2016 through July 2017], I sold well over one million dollars
($1,000,000) worth of ECL services and products to its clients."  Mass Decl. 2.

million in sales.  Although neither ECL nor IOPW specifies the profit margins at which ECL and IOPW operate, "[t]he Fifth Circuit follows a common sense approach to determine whether the defendant has met its burden with respect to the amount in controversy." *A & C Disc. Pharmacy, L.L.C. v. Caremark, L.L.C.*, 2016 WL 3126237, at *4 (N.D. Tex. June 3, 2016) (Fitzwater, J.) (citing *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240-41 (5th Cir. 2015)) (concluding that defendants offered evidence that satisfied their burden of establishing that at least one plaintiff's claim exceeded $75,000, because defendants' evidence showed each plaintiff's specific harms, and "common sense dictat[ed]" that some of the harms—such as one plaintiff's alleged emphysema and the wrongful death of her husband, and another plaintiff's alleged prostate cancer—placed more than $75,000 at stake); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995) ("A court, in applying only common sense, would find that if the plaintiffs were successful in their punitive damages claim, they would collect more than $50,000."); *Griffin v. HSBC Bank USA*, 2010 WL 4781297, at *3 (N.D. Tex. Nov. 24, 2010) (Lindsay, J.) (explaining that, because plaintiff sought an order rescinding foreclosure and restoring title of the property to her, the value of the property was to be used in determining the amount in controversy, and concluding that "a common-sense analysis and approach establish[ed] that the sum of [value of the property, additional damages, and attorney's fees] [was] more likely than not to exceed the jurisdictional threshold")).  Common sense dictates that ECL and IOPW would realize at least a 4% profit ($80,000) on $2 million in sales, which would satisfy the amount in controversy.  *See A & C Disc. Pharmacy, L.L.C.,* 2016 WL 3126237, at *4 (applying same

method to calculate profit). Based on the record, the court finds that Mass has shown by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold.[9]

D

The burden now shifts to ECL and IOPW to show to a legal certainty that they cannot recover in excess of the jurisdictional threshold.

ECL and IOPW stipulate in their motion to remand that their damages do not exceed the sum of $74,999.00. In determining the amount in controversy, the court must evaluate the jurisdictional facts "as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached." *Ford v. United Parcel Serv., Inc. (Ohio)*, 2014 WL 4105965, at *4 (N.D. Tex. Aug. 21, 2014) (Fitzwater, C.J.) (citing *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253-54 (5th Cir. 1998)). Because ECL and IOPW failed to limit their recovery to the jurisdictional threshold in their original petition and instead stipulated to limited recovery in their motion to remand, the court cannot consider their stipulation as a jurisdictional fact precluding removal. The Fifth Circuit *does* consider post-removal affidavits that *clarify* a petition that has previously left the jurisdictional question ambiguous. *See Asociacion Nacional de Pescadores a Pequena*

---

[9]Because the value of an injunction of Mass's competitive activity alone exceeds the jurisdictional threshold, the court need not assess the value of ECL and IOPW's confidential information, breach of contract damages, attorney's fees, or defamation damages. The court likewise need not address ECL and IOPW's argument that Mass's estimate of the value of ECL and IOPW's trade secrets is improper expert testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

*Escala O Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998) ("Under those circumstances, the court is still examining the jurisdictional facts as of the time the case is removed, but the court is considering information submitted after removal."). But in this case, there is no such ambiguity. Therefore, the court will not consider plaintiffs' stipulation as evidence of the amount in controversy or as a binding stipulation precluding removal. Without this evidence, ECL and IOPW have not carried their burden to show to a legal certainty that they cannot recover in excess of the jurisdictional threshold. The court therefore holds that Mass has shown an amount in controversy sufficient to establish federal diversity jurisdiction, and it denies ECL and IOPW's motion to remand.

III

The court now turns to Mass's motion. In the first ground, Mass moves the court to decide that California law governs this lawsuit, despite the Employment Agreement's choice of law provision. ECL and IOPW maintain that the court should apply Texas law, as the Employment Agreement's choice of law clause provides.[10]

---

[10]Neither party specifies to which claims their choice-of-law arguments relate. The court treats the choice of law issue as covering the claims arising from the restrictive covenants in the Employment Agreement (breach of contract, misappropriation of trade secrets, and breach of fiduciary duty), but not the common law defamation claim.

Federal courts sitting in diversity apply the forum state's choice-of-law rules when determining the enforcement of contract provisions. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580 (5th Cir. 2015). Thus the court applies Texas choice-of-law rules, specifically the Restatement (Second) of Conflict of Laws ("Restatement") when conducting the choice of law analysis.

In this case, the Employment Agreement contains clauses establishing that Texas law governs disputes arising out of the contract and that such disputes will be adjudicated exclusively in a Texas (federal or state) forum. Under Texas law, choice of law agreements are, by default, enforceable. *Id.* at 581. A party may show that the choice of law provision is unenforceable by satisfying the standards of § 187(2) of the Restatement:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187 (1971). Mass contends that the choice of law provision is invalid under § 187(2)(b).

> Even when a reasonable basis exists for selecting a state as the source of law governing a transaction, the parties' selection does not control if another state: (1) has a more significant relationship with the parties and the transaction at issue than the

chosen state does under Restatement § 188; (2) has a materially
greater interest than the chosen state does in the enforceability
of a given provision; and (3) has a fundamental policy that
would be contravened by the application of the chosen state's
law.

*Cardoni*, 805 F.3d at 582 (citing *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 325-27

(Tex. 2014)).

B

1

Under the first prong, the court determines the "more significant relationship" based

on a number of factors: (1) the place of contracting, (2) the place of negotiation of the

contract, (3) the place of performance, (4) the location of the subject matter of the contract,

and (5) the domicile, residence, nationality, place of incorporation and place of business of

the parties. *See Cardoni*, 805 F.3d at 582 (citing Restatement § 188(2)). Under this multi-

factor test, the court looks to whether California or Texas has more contacts with the parties

and the transaction at issue. *See id.* at 583 (comparing number and quality of contacts to the

two states in question).

Mass is a resident and citizen of California. He primarily works in California, with

a substantial number of his sales occurring in that state.[11] Furthermore, the place of

contracting favors California: Mass signed and returned the Employment Agreement via

---

[11]Mass describes 95% of his activity as focused in California, and David Fotiadis,
ECL's Sales Team Senior Vice President, suggests that while Mass was an ECL employee,
he executed 7 of his 15 total sales to customers in the state of California.

email from California.[12] *See* Restatement § 188 cmt. e ("the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect[.]"). Texas, on the other hand, bears a weak relation to the parties. Although ECL has employees in Texas, and one of it eight affiliate companies (Integrity EMR, LLC) is headquartered in Texas, ECL maintains its national headquarters in North Carolina. Mass has no contacts with the state of Texas aside from traveling to Dallas two times for training. And ECL and IOPW do not dispute that Mass made no sales in Texas. On balance, California has a more significant relationship to the parties and transaction than does Texas.

ECL and IOPW maintain that, although the location of performance of the obligation "alone is conclusive in determining what state's law is to apply," *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679 (Tex. 1990) (citing Restatement § 196 (1971)), this rule does not control where, as here, the contract anticipates performance in multiple states, *see Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 234 (Tex. 2008) ("The rule [of § 196] applies if the major portion of the services called for by the contract is to be rendered in a single state and it is possible to identify this state at the time the contract is made."). In this case, neither the offer letter nor the Employment Agreement specifies where

---

[12]Suzanne Rupert ("Rupert"), Director of Human Resources and Recruiting for ECL, sent the offer letter and Employment Agreement to Mass from Ohio. The offer letter stated: "[i]f not accepted within four days, this offer becomes null and void. Please send your acceptance of this offer via email as soon as possible to srupert@eliglobal.com." Ps. App. 11. Mass accepted the offer in California by signing and returning the letter via email from California.

performance of services is to occur. *See id.* (holding that for rule of § 196 to apply, "[i]t is necessary that the contract should state where the major portion of the services is to be rendered or that this place can be inferred either from the contract's terms or from the nature of the services involved[.]").  But the description of Mass's role as a Strategic Business Executive anticipates a position in the "Western region of the USA based out of a home office close to a major airport," with 40-50% of the job involving travel.  Mass initially covered Southern California, which is within one of several states in his sales territory.[13] And ECL and IOPW have proffered no evidence that either party expected Mass to make sales or reside in Texas.  Ultimately, ECL and IOPW have presented counter-arguments that undermine the quality of the parties' contacts with California,[14] but they have not pointed to any compelling Texas contacts that counterbalance the California contacts.  The court thus holds, based on its view of the pertinent factors, that California has a more significant relationship with the parties and the transaction at issue than does Texas.

2

The court considers next whether California has a materially greater interest than does Texas in whether the covenants in the Employment Agreement are enforceable.

Mass maintains that California has an interest in limiting non-competition covenants on employees residing within its borders.  ECL and IOPW point to Texas' competing interest

---

[13]ECL also expected Mass to sell products in Nevada, Arizona, and Hawaii.

[14]ECL and IOPW contend that the place of contracting, by itself, is a relatively insignificant factor.  Here, however, the court has found multiple contacts with California.

in maintaining uniformity in business contracts and protecting expectations of contracting parties.

Under Texas law

> [p]arties may express in their agreement their own choice that the law of a specified jurisdiction apply to their agreement. Judicial respect for their choice advances the policy of protecting their expectations. . . . However, the parties' freedom to choose what jurisdiction's law will apply to their agreement cannot be unlimited. They cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement. And they cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply.

*DeSantis*, 793 S.W.2d at 677.

Based on this court's reading of *Cardoni*, 805 F.3d at 584, it concludes that California has a materially greater interest in this case. In *Cardoni* the Fifth Circuit held that even where one of the parties was a Texas-based corporation, Texas did not have a materially greater interest in promoting uniformity of employment contracts than did Oklahoma in the impact of noncompete clauses on employees living within its borders. *Id.* (citing *DeSantis*, 793 S.W.2d at 679). In the present case, the facts are similar. California has a strong interest in the issue as it relates to Mass, an employee residing within its borders. Texas has a countervailing interest in protecting freedom and uniformity of contract. *See Drennen*, 452 S.W.3d at 329 ("With Texas now hosting many of the world's largest corporations . . . we also value the ability of a company to maintain uniformity in its employment contracts across all employees, whether the individual employees reside in Texas or New York."). But here,

ECL and IOPW are not headquartered in Texas. Thus Texas has an even weaker interest that it did in *Cardoni*, and the same factors that favored Oklahoma in that case favor California here. Accordingly, the court holds that California has a materially greater interest in the application of its law to this case.

3

The court now turns to the third prong under § 187(2)(b).

> In analyzing whether fundamental policy is offended under section 187(2)(b), the focus is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction.

*DeSantis*, 793 S.W.2d at 680.

Neither party disputes that California has a fundamental policy that favors protecting California residents from restrictive covenants that restrain their ability to work. *See* Cal. Bus. & Prof. Code § 16600 (West 2017) ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."). Texas, however, has adopted a more tolerant approach to restrictive covenants: an agreement not to compete is enforceable, provided it is reasonable. *See DeSantis*, 793 S.W.2d at 680 (citing *Frankiewicz v. National Comp Assoc.*, 633 S.W.2d 505, 507 (Tex. 1982)) ("An agreement not to compete is in restraint of trade and will not be enforced unless it is reasonable."). Reasonability of restrictive covenants under Texas law is a matter of Texas public policy. *DeSantis*, 793 S.W.2d at 680. The court thus concludes

that the application of Texas law, based on Texas policy concerns, to ECL and IOPW's contract claims would contravene California's own policy regarding restrictive covenants in employment agreements.

Because California law would apply in the absence of the choice-of-law provision, California has a materially greater interest than Texas, and California's fundamental public policy would be contravened by the application of Texas law, the parties' choice-of-law provision is invalid under § 187(2)(b) of the Restatement. The court therefore holds that California law governs the claims arising from Mass's Employment Agreement,[15] and it grants Mass's motion for an opinion on choice of law to that extent.

IV

The court now turns to Mass's motion either to dismiss the case on venue grounds under Fed. R. Civ. P. 12(b)(3) or to transfer the case under 28 U.S.C. § 1406 to the Central District of California, Western Division (which includes Los Angeles County).

A

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The

---

[15]Because the court holds that the choice-of-law provision is invalid under § 187(2)(b), it does not reach Mass's argument that the provision is invalid under § 187(2)(a) because there is no substantial relationship between the parties and Texas. The court also does not reach at this time ECL and IOPW's additional arguments based on the applicability of Cal. Lab. Code § 925 to the facts of this case.

"[d]efendant's only burden is to prove a defect in venue sufficient to enable the Court to dismiss or transfer the action." *Sampson Indus., Inc. v. Amega Indus., Inc.*, 1998 WL 826907, at *2 (N.D. Tex. Nov. 18, 1998) (Solis, J.) (citing § 1406(a) (1993 & Supp.1998); *Gorman v. Grand Casino of La., Inc.—Coushatta*, 1 F.Supp.2d 656, 660 (E.D. Tex. 1998)). "Once venue is challenged by a defendant, the burden is on the plaintiff to prove that venue is proper in the judicial district in which the action was brought." *Id.* (citing *Advanced Dynamics Corp. v. Mitech Corp.*, 729 F. Supp. 519 (N.D. Tex. 1990) (Belew, J.)). Therefore, the question presented is whether venue is proper in this court.

Rule 12(b)(3) authorizes a party to move to dismiss for "improper venue." For the purposes of § 1406(a) and Rule 12(b)(3), "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, ___ U.S. ___, 134 S. Ct. 568, 573 (2013). This inquiry is generally governed by 28 U.S.C. § 1391, which states that, "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in" federal district courts. 28 U.S.C. § 1391(a)(1). Section 1391(b) specifies the districts in which venue is proper:

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391. If a case does not fall within one of these districts, venue is improper, and the case must be dismissed or transferred under § 1406(a). *Atl. Marine Constr. Co.*, 134 S. Ct. at 577. "Whether the parties' contract contains a forum-selection clause has no bearing on whether a case falls into one of the specified districts." *Id.* Thus the court may not dismiss under § 1406 or Rule 12(b)(3) a case filed in a district that falls within § 1391. *Id.*

## B

Mass's sole argument for why venue is improper in Texas under Rule 12(b)(3) and § 1406(a) is that he voided the forum selection and choice-of-law clauses, which means that, pursuant to California Labor Code § 925, the case should be litigated in California. ECL and IOPW respond that, even without the forum selection clause, venue is proper in this court pursuant to § 1391(b)(2) because a "substantial part of the property that is the subject of the action" is situated in Texas. ECL and IOPW also maintain that this case is properly before this court because the forum selection clause is mandatory and valid.

The court agrees with ECL and IOPW that Texas is a valid venue under § 1391(b)(2). Mass does not dispute that computer servers storing confidential information and trade secrets are located in Texas.[16] Nor does he dispute that such servers are specifically

---

[16]Rupert avers: "ECL maintains servers in Texas that house ECL's confidential information and trade secrets, as well as the confidential information and trade secrets of the ECL Affiliates." Ps. App. 2.

identifiable, tangible, and the subject of restrictive covenants, such as the noncompete, in Mass's Employment Agreement. District courts in the Fifth Circuit have held that venue is proper based on the location of the allegedly misappropriated information. *See e.g.*, *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F.Supp.2d 681, 689 (S.D. Tex. 2010) (holding that location of central database of clients and other allegedly misappropriated information in Houston indicated proper venue in Texas). And other district courts have held the same in the context of Computer Fraud and Abuse Act claims. *See, e.g.*, *Argent Funds Grp., LLC v. Schutt*, 2006 WL 2349464, at *2 (D. Conn. June 27, 2006) (holding venue appropriate in Connecticut because file servers containing confidential business information at issue in case located in Connecticut); *see also Dental Health Prod., Inc. v. Ringo*, 2009 WL 1076883, at *4 (E.D. Wis. Apr. 20, 2009) (holding same in Wisconsin). Accordingly, the court holds that the location of the computer servers containing ECL's confidential information is sufficient to establish that venue is proper in Texas.

Alternatively, the court holds that venue is proper because Texas is where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Mass traveled to Texas to receive new employee training in July 2016. He also attended a training program for Strategy Business Executives in Texas in January 2016. *See S & D Trading Acad., LLC v. AAFIS, Inc.*, 494 F.Supp.2d 558, 570 (S.D. Tex. 2007) (finding venue proper in Texas when defendants "likely learned at least some of the trade secrets" at training in Houston).

Because the sole inquiry under Rule 12(b)(3) and § 1406 is whether venue is proper

under § 1391, the court need not reach Mass's argument that the Texas forum selection clause is invalid on the ground that it contravenes California policy as expressed in Cal. Lab. Code . § 925.[17]  Regardless of the validity of the clause, ECL and IOPW have shown that venue is proper in this court.  Accordingly, the court denies Mass's motion to transfer or dismiss based on improper venue pursuant to Rule 12(b)(3) and § 1406(a).

## V

Mass also moves to dissolve the state court TRO, contending that it was issued improperly by a Texas court based on Texas law.  He also moves the court to issue no further injunctions.

The court denies as moot Mass's motion to the extent it is addressed to the state court TRO, which expired on September 28, 2017.  And the court denies the motion without prejudice insofar as it relates future injunctive relief, considering that ECL and IOPW's

---

[17]Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Peacock v. Ins. & Bonds Agency of Tex., PLLC*, 2012 WL 3702920, at *3 (N.D. Tex. Aug. 28, 2012) (Fitzwater, C.J.) (citing *Launey v. Carnival Corp.*, 1997 WL 426095, at * 1 (E.D. La. July 25, 1997) (internal quotation marks omitted) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972))).  Unreasonableness is indicated by a number of factors: (1) the forum selection clause was the product of fraud or overreaching; (2) the selected forum will deprive Mass of his day in court (3) the chosen law will deprive Mass of a remedy; or (4) the forum selection clause contravenes public policy of the forum state. *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).  "The party who seeks to avoid application of a forum selection clause bears a heavy burden of proof justifying its avoidance." *Davillier v. Sw. Sec., FSB*, 2012 WL 6049014, at *4 (N.D. Tex. Dec. 5, 2012) (Fitzwater, C.J.) (citing *Launey*, 1997 WL 426095, at *2).

application for preliminary injunction is still pending in this court and venue is proper here.

## VI

Mass also maintains that he is entitled to attorney's fees based on California law[18] and to make a claim against the bond that ECL posted. The court denies without prejudice Mass's motion to set a briefing schedule on the issue of attorney's fees and Mass's claim against the bond. Although Mass requests that the schedule specify an appropriate time after these proceedings are disposed to make such claims, the court in its discretion concludes that post-judgment matters can be scheduled later to the extent they are not governed by the Federal Rules of Civil Procedure or this court's local civil rules.

\* \* \*

Accordingly, the court denies ECL and IOPW's motion to remand; grants Mass's motion for an opinion on choice of law to the extent of holding that California law applies to this lawsuit; denies Mass's motion for dismissal or transfer; denies as moot Mass's motion

---

[18]Mass contends that he is entitled to attorney's fees under Cal. Lab. Code § 925(c). He also argues that he is entitled to attorney's fees based on Cal. Civ. Code § 1717, which provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717 (West).

to dissolve the state court TRO; and denies without prejudice Mass's motion for a briefing schedule on attorney's fees and other relief.

**SO ORDERED**.

February 20, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE